[Civ. No. 67438. Second Dist., Div. Five. Oct. 27, 1983.]

PAULA TEMPLE, Plaintiff and Appellant, v.
VELCRO USA, INC., Defendant and Respondent.

COUNSEL

West, Powell & Glass, Richard J. Evans and Paul F. Glass for Plaintiff and Appellant.

Kern, Wooley & Maloney and Ralph S. LaMontagne, Jr., for Defendant and Respondent.

OPINION

**HASTINGS, J.**—This is an appeal from a summary judgment in favor of Velcro USA, Inc. (Velcro), defendant and respondent.

Plaintiff and appellant Paula Temple (Temple) brought the within action for the wrongful death of her husband. His death was caused by a crash of his Raven S-55 hot air balloon after it had plummeted to the ground. Temple claims one of the causes for the crash was the failure of a Velcro closure on the deflation panel of the balloon.

The Raven S-55 was manufactured in 1974 by Raven Industries Inc., a defendant in the lower court action, who is not a party to this appeal. Velcro

manufactured and wholesaled a polyester Velcro closure consisting of a hook and loop which was used on the balloon to hold the deflation (or rib) panels in place. In its moving papers for a summary judgment Velcro presented the following facts: At the time of Temple's husband's death, Velcro's hook and loop closure was being used to secure the deflation panel on a great number of hot air balloons then in use including the Raven S-55. Velcro never participated in the design, manufacture, sale or servicing of hot air balloons.

It eventually learned that its product was being used on such balloons, and attempted to bring to the attention of the aviation community the inherent dangers of such usage. It tried to have the Federal Aviation Administration (FAA) issue an airworthiness directive calling attention to this fact sometime before February of 1976. On February 17, 1976, the FAA notified Velcro that it would not issue such a directive. Velcro continued through its attorneys to ask the FAA to take further action, however, on October 5, 1976, the FAA reiterated its position that it would take no action. In May 1979 Velcro requested the FAA to issue an airworthiness directive forbidding the use of its closures in deflation panels of hot air balloons. Again the FAA took no action.

In May of 1977 Velcro sent a direct warning to all known registered owners of balloons utilizing the product. A copy of this written warning is attached to this opinion as exhibit A. In this connection Velcro hired Aviation Data Service (ADS) to send out copies of exhibit A, which it did, including a copy to the Temples. Among the moving papers of Velcro's motion for summary judgment was the declaration of Jay Richard Strauss, a lawyer. He stated he was at the scene of the viewing of the balloon after the accident and talked to Temple as follows: "During the inspection I asked Mrs. Temple whether Richard Temple had received the warning. Mrs. Temple responded: 'Yes, but we didn't pay any attention to it. Velcro is just trying to protect itself.'"

Strauss' declaration further stated that his office caused copies of the warning to be mailed to all registered owners and attached to his declaration a certification executed by one John Adams, general manager, Aviation Data Service, with his address attesting to the mailing of the warning to the individuals and entities shown on a computer printout listing the names which were supplied through Aviation Data Service by the FAA. The computer printout contained the name of Richard L. Temple, 7721 Sacramento Avenue, Rancho Cucam, Cal. 91730.

Temple, in her opposition to the motion for summary judgment, objected to the declaration of Strauss in connection with her statement as follows:

"Said statements are hearsay, irrelevant as to Mrs. Temple's knowledge of any warning, since she did not go up in the balloon, and incompetent and lacked foundation to show any knowledge of decedent. [¶] It is further urged that it is totally improper and unethical for counsel to solicit statements from a party who is represented by counsel during an inspection which plaintiff was gracious enough to allow." She also objected, on foundational grounds, to the evidence submitted by John Adams.

The first hearing on the motion for summary judgment was continued for the purpose of permitting Temple and Velcro to file additional affidavits or declarations. Thereafter, a declaration of John Adams was filed in which he stated under oath that he personally mailed a copy of the warning to each person listed as a registered hot air balloon owner including Richard L. Temple.

Among the new evidence filed by Temple was the declaration of Richard J. Evans, Temple's attorney at the time of the inspection of the disabled balloon. He claims he allowed Velcro's inspection in a spirit of cooperation and then states:

"There were numerous individuals who arrived for the inspection and I made a specific point to advise them that the purpose of allowing them to be there was solely for the inspection of the balloon and that no questioning of or statements were to be taken of Mrs. Temple. I advised that their only communication with Mrs. Temple would be limited to what was necessary for the inspection of the balloon.

"I was present at the inspection and was not aware of nor would I have allowed questioning of Mrs. Temple regarding any alleged warning by Velcro. This was not intended as a deposition nor an interview with Mrs. Temple.

"I was surprised at the statements alleged in the declaration of attorney Jay Strauss and of his attempts to take advantage of our cooperation."

Temple filed her own declaration which was as follows:

"On November 10, 1979, my attorney allowed the remains of the balloon, which were being stored at my home, to be inspected.

"There were many people who showed up for the inspection. I showed them where the balloon was and talked to them about the balloon.

"The inspection took place within a month of my husband's death and I do not recall specifically anything that was said.

"My attorney advised me not to be concerned as the inspection was only for the purpose of seeing the balloon and that I would not be giving statements or be questioned."

Temple's opposition on the issue of the "warning" and her husband's knowledge was stated in the following manner:

"Defendant contends that it is absolved of all liability by its alleged 'warning' sent to balloon owners.

"However, there remains an issue of whether the warning was *sufficient* or was reasonable under the circumstances.

"The declaration of L. McKinley filed and served herewith clearly shows that the dangers were not made clear and that the overall impression of the 'warning' was solely an attempt to protection for Velcro. . . . With defendant's knowledge of the extreme danger of its product, their 'warning' fell very short of reasonable conduct.

"Defendant claims in its 'warning' that it was ordering a recall of all closures sold for use in hot air balloons."

It is quite apparent from the declarations filed by Temple that she is not disaffirming receipt of a copy of the warning prior to her husband's use of the balloon.

Temple's complaint stated causes of action for negligence, breach of express and implied warranties, strict liability and wilful misconduct. ██ An adequate warning is a sufficient defense to a strict liability action. (*Gherna* v. *Ford Motor Co.* (1966) 246 Cal.App.2d 639 [55 Cal.Rptr. 94], *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44 [46 Cal.Rptr. 552], and *Crane* v. *Sears Roebuck & Co.* (1963) 218 Cal.App.2d 855 [32 Cal.Rptr. 754].) Although the warning here was not on the product (realization of its dangerousness came after the sale), warning was given and read or should have been read before further use of the balloon. Any distinction between the facts of this case and the warnings called for in the cited cases would be meaningless.

If the warning was adequate it certainly would be a proper disclaimer to any express or implied warranties and would also negate any negligence or wilful misconduct.

██ This brings us to the key issue on appeal, namely the adequacy of the warning. Temple claims this issue is a question of fact because a jury

could find (1) the language of the warning may not have been sufficient to "notify hot air balloon operators of the imminence of 'serious injury and death' due to the possibility of peel stress and/or envelope collapse arising out of the Velcro fasteners on the deflation panels of the balloons," (2) that the warning was inadequate in the manner it was sent and the frequency of its mailings, and (3) the warning was really some esoteric form of legal notice amounting to a *legal disclaimer,* rather than a notice of impending doom if the Velcro deflation panel failed.

Items (1) and (3) can be quickly answered. Interpretation of a written document, where extrinsic evidence is unnecessary, is a question of law for the trial court to determine (Evid. Code, § 310, subd. (a) and *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]). It was therefore proper for the court in a motion for summary judgment to determine the adequacy of the warning language as a matter of law. The court obviously found the language of the warning sufficient to apprise the reader of the dangers of using a hot air balloon with a Velcro closure. We agree. The warning was very clear, understandable and completely unambiguous. It forcefully brought home the intended message.

Item (2) is rendered moot by the fact that the Temples actually received the notice and then read it or should have read it.

What more Velcro could have done in issuing its warning, under the circumstances, is hard to imagine. The court was correct in granting the summary judgment in Velcro's favor.

The summary judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.