A01A0837. SMITH v. ONTARIO SEWING MACHINE COMPANY, LTD. et al.

(548 SE2d 89)

ELDRIDGE, Judge.

This is an appeal from the grant of summary judgment to the manufacturer-seller in a fact-intensive product liability case based upon proximate cause involving the post-sale warnings, i.e., a mop assembly machine that had a cutter blade activated without the controls being activated by the plaintiff. The plaintiff, Regina Smith, was injured after the post-sale notice was sent by Ontario Sewing Machine Company, Ltd. to her employer, Wilen's Mop Manufacturing; the notice only warned the employer to stop using the machinery and to purchase a more expensive newer model to avoid the dangerous manufacturing design of the old equipment. The notice did not identify the design defects or any method to correct the danger other than to stop using the machine. The trial court found that Wilen's failure to stop using the dangerous machinery after this notice was the supervening proximate cause of plaintiff's injury. Ontario initially took remedial steps to correct what it believed was the cause of two prior injuries by moving the control buttons apart and by recessing them. But when these remedial steps failed to prevent further injuries, Ontario took no further steps to correct the dangerous design defect other than to send the post-sale warning to Wilen. When Wilen notified Ontario, both verbally and in writing, that it could not take the machines out of service, Ontario was in negotiation with Wilen over making corrections or sale of new machinery at the time of plaintiff's injury. Ontario had the duty not only to adequately warn of the danger from its product's defective design, but also to exercise ordinary care to correct the danger, which duty was not relieved by the acts or omissions of Wilen, because Ontario had actual notice that Wilen would not stop using the machinery. Thus, Ontario should have reasonably foreseen that its concurrent negli-

gence with Wilen's negligence would cause further injuries to employees if the defect was not corrected. Therefore, we reverse, because the issue of proximate cause in this case is for the jury.

On July 22, 1998, while working as a temporary production worker for Wilen, with only ten weeks experience, Smith had her hand badly cut by the cutter blade when the cutter blade activated without the two separated control buttons being pushed simultaneously and intentionally by the operator. She did not know that Ontario had given Wilen a "recall" notice or that two employees had previously been injured when the blade activated spontaneously, as in her case.

In order to operate the mop making machine the operator reaches under the blade cage, which also acts as a clamp for the yarn while the blade is activated, pulls a bundle of yarn under the cage and over the blade opening, and only then the cutting blade activates when the operator pushes two control buttons simultaneously with separate hands. To carry out this full operation, the operator's hands have been removed from under the cage and the cutting area and are on the control buttons.

The cutter blade is a retractable ten-inch rotary blade mounted under the table, like a table saw, which blade rises through the blade opening when activated. After the desired length of yarn is pulled across the blade, the cage/clamp comes down, and the blade comes up on activation by pressing the two buttons. Upon release of the buttons, the blade stops and retracts below the opening. Plaintiff was taught that this was the correct way to operate the machine, and there is no evidence to the contrary.

Plaintiff had some general concern that placing her hand under the cage/clamp and across the blade opening could be dangerous; however, to activate the blade required that both hands be free from the area of danger and used to depress the two buttons; therefore, her hands were safe when pushing the buttons. She did not know that the blade could activate without the control buttons being pressed, so she had no actual and subjective knowledge of the real danger in this case.

On July 22, 1998, plaintiff reached with her left hand above the blade opening to grasp the yarn, when the cage/clamp came down and the blade came up, cutting her hand without both control buttons being depressed.

Plaintiff's expert testified that the defect causing the injuries was that the circuit control design allowed spontaneous activation if the control circuit valves of the pneumatic control system malfunctioned; this constituted a violation of American National Standards Institute standards. Notably, this was not the defect identified by Ontario and known by Wilen.

Several production workers testified that they had seen the blade activate without the buttons being pushed prior to plaintiff's injury. Prior to plaintiff's injury, two other workers had been injured by the activation of the blade without the buttons being pressed. The first was in September 1994. On November 25, 1996, a second employee was injured when the blade spontaneously activated. All of this was known by Ontario prior to plaintiff's injury. Ontario failed to exercise ordinary care to investigate properly and to discover the cause of the injuries; it identified a defect that did not cause the injuries and sought to correct the wrong defect. Ontario believed that a design defect allowed operators to depress the buttons with their bodies accidentally activating the blade. In early 1996, Ontario redesigned the controls by moving them farther apart so that the operator's body could not depress them and later made the buttons recessed after the second injury, because it still believed that the buttons were being depressed accidentally by the operators. Both Ontario and Wilen held this wrong belief that the operators had depressed the buttons with their bodies and believed that moving the buttons farther apart and recessing them corrected the danger.

On September 19, 1997, Ontario sent to Wilen what it denominated a "Re-call of cut-off option on DD-16 machines," but it failed to identify any defect or specific danger in the notice. The "recall" notice stated:

> As you are aware, there have been two incidents where serious operator injury occurred while using equipment. In order to avoid any possibility of further injuries, we are recalling this equipment. You are hereby advised to immediately cease use of this equipment, and to disable operation by removing electrical and compressed air supplies to it. You will be reimbursed for the actually paid cost of this equipment as per our records on receipt of the equipment, complete and in working order, by us. We will arrange for pickup or shipment of the equipment in our plant. This offer to reimburse the full invoice cost is valid for 90 days. We have designed a new feeder/cutter machine which provides improved safety and productivity, which could be used to replace the re-called cut-off options. Please let me know at your earliest convenience when this equipment is available for return.

On October 2, 1997, Dietmar Jeske, the principal at Ontario who had redesigned the controls, was notified by Joe Wilen in writing and earlier by telephone that Wilen could not and would not remove the cutter without an immediate replacement cutter, because this would

shut down all production. Jeske and Wilen had agreed that 90 days was insufficient time to resolve the problem. Wilen also reminded Jeske in the letter that, during Jeske's September 24, 1997 visit and inspection at the Wilen plant after the notice, they had agreed "that it may be possible to secure the existing cutters." Wilen also wrote that Wilen's position was that Ontario should correct the problem at its expense and that Ontario said that this would cost too much. Wilen reminded Jeske that Wilen's downtime to change over the cutter machines would be considerable. He stated, "Wilen should not be made to carry the burden of additional costs due to the engineering design that Ontario feels is unsafe." Thus, Wilen and Ontario fought over money, while the true defect remained unidentified and uncorrected, resulting in plaintiff's injuries.

Jeske denied the delay agreement and testified that Wilen refused the "recall" and threatened suit. But, Jeske admitted that he was aware, prior to plaintiff's injury, that another customer at its own expense had modified the equipment to make it equivalent to the new and improved equipment offered in the "recall" letter. Such customer modification did away with the need for replacement of all the machinery. However, Ontario never told Wilen that self-help remedial action was possible.

After plaintiff's injury and at Wilen's own expense, Wilen modified the defective control system for all the cutters, eliminating the defects causing the injuries, at a cost of $400 per unit. Thus, the evidence showed that two reasonable, quick, and relatively inexpensive remedial redesigns existed that users made themselves to eliminate the dangerous defects; this is compared to defendant's third solution, which was costly in downtime or lost production time from production and in money for purchase of Ontario's new generation of equipment. Ontario demanded in the "recall" notice that Wilen replace Ontario's old generation machine with a new generation machine.

To determine the issue of proximate cause of plaintiff's injuries, Ontario's different duties must be analyzed to determine as a mixed question of law and fact supervening proximate cause versus concurrent proximate cause, as well as the question of plaintiff's assumption of risk.

(a) Georgia law imposes on the manufacturer of personal property the duty to exercise ordinary care to warn users of a known or reasonably foreseeable risk of injury or death after a product's sale, because the manufacturer's duty does not cease upon sale. This is illustrated under OCGA § 51-1-11 (c), which creates the statute of repose for product liability, which states that "[n]othing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from the use of a product once that danger becomes known to the manufacturer," and which applies ten years post-sale.

*Chrysler Corp. v. Batten*, 264 Ga. 723, 727 (4) (450 SE2d 208) (1994). The manufacturer is in the best position to either discover or learn of dangerous product defects and to determine how to correct such defects through remediation. The manufacturer has superior knowledge of such defects and the ability to find them, because notice of the defects comes to the manufacturer through product testing, quality control, product complaints, product liability suits, warranty suits, government-imposed recalls, and industry experience. See *Chrysler Corp. v. Batten*, supra at 724 (1); *Love v. Whirlpool Corp.*, 264 Ga. 701, 704 (1) (449 SE2d 602) (1994); *Mack Trucks v. Conkle*, 263 Ga. 539, 544 (4) (436 SE2d 635) (1993); *DeLoach v. Rovema Corp.*, 241 Ga. App. 802, 804 (527 SE2d 882) (2000); *Bishop v. Farhat*, 227 Ga. App. 201, 206 (6) (489 SE2d 323) (1997). "[T]hat the duty to warn arises 'once the danger becomes known' reflects the existing case law with its actual or constructive knowledge standard. . . . [Thus, the] manufacturers [are not relieved] of their liability for failing to warn of a danger arising from the use of a product whenever that danger becomes known to the manufacturers." *Chrysler Corp. v. Batten*, supra at 727 (4); see also *DeLoach v. Rovema Corp.*, supra at 804. Thus, Ontario was under a duty to adequately warn of the specific danger that it knew or reasonably should foresee from making a proper investigation into the two prior injuries caused by its product. See *Center Chem. Co. v. Parzini*, 234 Ga. 868, 869-870 (3) (218 SE2d 580) (1975); *Moore v. ECI Mgmt.*, 246 Ga. App. 601, 605 (2) (542 SE2d 115) (2000); *Giordano v. Ford Motor Co.*, 165 Ga. App. 644, 645-646 (2) (299 SE2d 897) (1983); *Talley v. City Tank Corp.*, 158 Ga. App. 130, 137 (279 SE2d 264) (1981).

(b) When the manufacturer subsequently learns that its products have been sold with dangerous defects, it is under a duty to recall the product from the market and to remedy the defect or replace the product in some cases in the exercise of ordinary care beyond the duty to give a post-sale warning. See generally *Banks v. ICI Americas*, 264 Ga. 732, 737 (1) (450 SE2d 671) (1994); *Chrysler Corp. v. Batten*, supra at 724. In this case, Ontario neither found the right defect, fixed the defect, nor replaced the machine at its expense.

(c) Here, Ontario was both the product manufacturer and seller; it had actual knowledge of the existence of the dangerous condition causing the activation of the blade without the controls being activated, but it misidentified the cause and failed in its attempts to fix the dangerous design defect. Further, it knew after the notice had been sent to Wilen that the employer and employees were continuing to use the dangerously defective product from Jeske's visit to the plant to discuss the danger and Wilen's refusal to stop using the dan-

gerous machinery.[1]

> The common-law duty imposed upon suppliers of chattels includes the duty to warn of foreseeable dangers arising from the reasonable use for which the product is intended and requires the exercise of reasonable care to inform third persons of the dangerous condition or of the facts which make the product likely to become dangerous.

(Citation omitted.) *Powell v. Harsco Corp.*, 209 Ga. App. 348, 349-350 (2) (433 SE2d 608) (1993); see also *Corbin v. Farmex*, 227 Ga. App. 620, 623-624 (490 SE2d 395) (1997). Also, Ontario had actual knowledge of the two prior injuries at Wilen's plant and took the step of telling Wilen in writing to immediately cease using the products because the machines were dangerous. When Wilen began to quibble over money to remedy this dangerous defect that Ontario could not or would not fix, Ontario sent its officer, Jeske, to the Wilen plant to talk to Wilen, knowing that Wilen had refused to take the dangerously defective machinery out of use. Thus, there existed foreseeability of injury.

(d) A post-sale warning must be adequate and specific to satisfy the manufacturer-seller's duty to the ultimate user to protect from harm; a vague or generalized warning that fails to warn of the specific defect, the danger from the defect, and remediation is not an adequate warning. Further, the evidence showed that plaintiff was not such an experienced and professional operator that a specific warning of the danger was not necessary to relieve Ontario of its duty to warn her. See *Yaeger v. Stith Equip. Co.*, 177 Ga. App. 835, 836 (341 SE2d 492) (1986); *Giordano v. Ford Motor Co.*, supra at 645-646. In this case, there was a generalized warning only of a general danger from use of the product without specific notice or warning of the actual defect and danger. In fact, Ontario did not even warn of what it erroneously believed was the cause of the injuries, i.e., but-

---

[1] In cases imposing successor liability for an earlier manufacturer, this Court has recognized that the duty to warn of danger discovered after the sale exists in the proper case. See *Corbin v. Farmex*, 227 Ga. App. 620, 624 (2) (490 SE2d 395) (1997), rev'd on other grounds, *Farmex v. Wainwright*, 269 Ga. 548, 549 (501 SE2d 802) (1998). *Corbin* approved citation to § 13 (b) (1) of the Restatement of Torts, 3rd, Product Liability. While not a successor corporation, Ontario was in the same position of actual knowledge that would cause even a successor corporation to be liable for failure to warn of post-sale knowledge of danger. Jeske was aware of the actual production workers, because he saw them in the plant. Also, he was aware that Wilen was not going to remove the machines with the defective controls from service despite his inadequate warning, and he took no steps to warn the actual known users either by warning signs to be attached to each machine, by verbally telling the production workers personally when he was in the plant, by mailing to each a personal warning; by having warning fliers distributed, or by other reasonable methods to warn the actual users. See Restatement of Torts, 3rd, Product Liability, § 13 (b) (2).

tons too close together and not recessed. Further, the warning failed to be directed to the third parties actually using the product, who were in immediate danger from the defect, and the notice was not intended to reach such user, even though such users were known and reasonably foreseeable to Ontario. *Yaeger v. Stith Equip. Co.*, supra at 836; *Giordano v. Ford Motor Co.*, supra at 645-646. Although Jeske had actual knowledge of the production workers' general identity and could have, with the exercise of reasonable care, determined with certainty their identity, Ontario failed to do so, because it sought refuge behind the "recall" notice to shift the burden of liability to Wilen, abdicating its duties of reasonable care. See *Powell v. Harsco Corp.*, supra at 349-350 (2); see also *J. C. Lewis Motor Co. v. Williams*, 85 Ga. App. 538, 541-542 (69 SE2d 816) (1952).

(e) The trial court granted summary judgment, because Wilen failed to heed Ontario's warning and remove the machines from use in production as Ontario directed; therefore, the trial court reasoned erroneously that the sole proximate cause of plaintiff's injury was Wilen's failure to stop the use of the dangerously defective machinery, which constituted the supervening proximate cause of plaintiff's injury and which cut off the liability of Ontario in design and in failing to warn as the proximate cause. However, failure to heed the warning did not constitute the supervening proximate cause of plaintiff's injury.

"As a general rule, issues of causation are for the jury to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases." *Ogletree v. Navistar Intl. Transp. Corp.*, 245 Ga. App. 1, 3-4 (1) (535 SE2d 545) (2000). For damages to be recovered in a tort action, there must be both causation in fact and proximate cause of the injury resulting from defendant's tort. See *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16) (1990); *Talley v. City Tank Corp.*, supra at 134 (3). "The defendant's conduct is not a cause of the event, if the event would have occurred without [the causal link or connection]." (Citation and punctuation omitted.) *Gen. Motors Corp. v. Davis*, 141 Ga. App. 495, 496 (1) (233 SE2d 825) (1977); see also *Ogletree v. Navistar Intl.*, supra at 3.

> Whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of [plaintiff's] case. . . . It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act . . . of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to

cause the injury. While the question of proximate cause is usually submitted to the jury as a question of fact, it may be decided as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's [defective design and inadequate recall] were not the proximate cause of the injury.

(Citations and punctuation omitted.) *Powell v. Harsco Corp.*, supra at 350. However, factually such was not the case under the evidence in this record, because Ontario had actual knowledge that Wilen was not going to follow its alleged "recall" warning notice and that the "recall" failed to specify any defect and gave only a general warning that its machinery should not be used and should be returned. Jeske went to the Wilen plant after the "recall" notice and prior to the injury, and Ontario took no steps to remove the danger, although it had actual knowledge of the third-party users who would be affected by the dangerous defect unless it was corrected. Id.

In this case, the design defect caused the injury both in fact and as proximate cause; Wilen's failure to heed the warning might have prevented the injury by totally stopping use of the machinery, but such omission did not in fact cause the injury from the machine starting improperly; Ontario's conduct did. Such is the difference between concurrent proximate cause and proximate cause. While Wilen's omission to heed the notice was not a sufficient independent supervening act to alone constitute the proximate cause and was directly related to Ontario's inadequate "recall" efforts, the warning was inadequate.

While the general rule is that if, subsequently to an original wrongful or negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act . . . and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.

*Southern R. Co. v. Webb*, 116 Ga. 152, hn. 1 (42 SE 395) (1902); see also *Williams v. Grier*, 196 Ga. 327, 338 (2) (26 SE2d 698) (1943); *Storer Communications v. Burns*, 195 Ga. App. 230, 231-232 (393 SE2d 92) (1990); *Edwards v. Robinson-Humphrey Co.*, 164 Ga. App. 876, 881 (3) (298 SE2d 600) (1982).

As has been previously discussed, the warning could be found

inadequate and failed to be directed to the ultimate user. More importantly, Ontario had actual knowledge that the warning was not being heeded by Wilen, placing the production workers at immediate risk of injury and death, and knew of the actual existence of such production workers from the observation of its officer Jeske in touring the production lines. Thus, Ontario could reasonably foresee the negligence of Wilen and the consequence to the plaintiff. This made Ontario's negligence concurrent with the negligence of Wilen, who enjoyed immunity under workers' compensation, in failing to heed the warning and either fix the machines, as it subsequently did, or take them off line. Thus, Wilen was not the supervening proximate cause but a concurrent proximate cause with Ontario's negligence in design, recall, and failure to adequately warn of the known danger. Ontario urges foreign law, which follows a radically different tort jurisprudence from Georgia tort law, be engrafted into our law with unforeseeable consequences,[2] and this Court will not follow such foreign cases for this reason.[3]

(f) Ontario, as the manufacturer, had a duty to exercise reasonable care to discover and to repair the known dangerous design defects in the production machinery on recall, because the duties to warn of subsequent known dangers may coexist with the duty of safe manufacture or repair. *Chrysler Corp. v. Batten*, supra at 724; see also *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (319 SE2d 470) (1984); *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 699-701 (1) (294 SE2d 541) (1982). The manufacturer could not satisfy its

---

[2] *Nishida v. E. I. du Pont de Nemours & Co.*, 245 F2d 768 (5th Cir. Miss. 1957); *Rekab, Inc. v. Hrubetz & Co.*, 261 Md. 141 (274 A2d 107) (1971); *Temple v. Velcro USA*, 148 Cal. App.3d 1090 (196 Cal. Rptr. 531) (1983); *Ford Motor Co. v. Wagoner*, 183 Tenn. 392 (192 SW2d 840) (1946); *E. I. du Pont de Nemours & Co. v. Ladner*, 221 Miss. 378 (73 S2d 249) (1954). The trial court relied upon these foreign authorities urged by Ontario. The majority of these cases were decided prior to the advent of the modern development of product liability law and while the different jurisdictions still followed contributory negligence as an absolute bar without comparative negligence.

[3] In each of these foreign jurisdictions, either comparative fault, pure comparative negligence, modified comparative negligence, or common law contributory negligence is followed, which differs from Georgia's comparative negligence. Under comparative fault or pure comparative negligence in such jurisdictions, assumption of risk, contributory negligence, contribution, and joint and several liability have been abolished, and all parties' and nonparties' liability is compared; each party defendant pays only their portion of the damages based upon their negligence. In short, plaintiff can recover some damages so long as his or her negligence is only a concurrent proximate cause and not the sole proximate cause of injury. See *Donald v. Triple S Well Svc.*, 708 S2d 1318, 1326 (Miss. 1998); *Daly v. Gen. Motors Corp.*, 20 Cal.3d 725 (575 P2d 1162) (1978). Tennessee follows a modified form of comparative negligence similar to Georgia's comparative negligence. *McIntyre v. Balentine*, 833 SW2d 52 (Tenn. 1992). Maryland follows the common law contributory negligence that bars recovery if the plaintiff was negligent at all and follows no form of comparative negligence. See *Stewart v. Hechinger Stores Co.*, 118 Md. App. 354 (702 A2d 946) (1997); *Harrison v. Montgomery County Bd. of Ed.*, 295 Md. 442 (456 A2d 894) (App. 1983).

duty to exercise reasonable care for a dangerous design defect merely by giving a warning to Wilen, because it was reasonably foreseeable that third parties would be in danger if Wilen failed to act. See *Yaeger v. Stith Equip. Co.*, supra at 836; *Giordano v. Ford Motor Co.*, supra at 645-646. There is evidence in the record raising material issues of fact that Ontario knew of an alternative design used to correct the danger of the design defect by another customer prior to plaintiff's injury and failed either to employ such alternative design at the Wilen plant or to inform Wilen of it so that Wilen could use such remedial measures. *Chrysler Corp. v. Batten*, supra at 724. Further, Wilen developed its own design to eliminate the danger after plaintiff's injury, demonstrating the feasibility of such immediate on-site remediation without replacing all of the machinery, which Ontario in the exercise of ordinary care failed to discover or to make as an alternative to its own costly remedy. See *Banks v. ICI Americas*, supra at 734-737; *Chrysler Corp. v. Batten*, supra at 724. "[W]hether the manufacturer acted reasonably in choosing a particular . . . design, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk" applies not only in the risk-utility analysis of initial design, but also on a product recall for repair or for remanufacture under an alternative redesign for the same reasons. *Banks v. ICI Americas*, supra at 734 (1). "When a jury decides that the risk of harm outweighs the utility of a particular design (that the product is not as safe as it should be), it is saying that in choosing the particular design and cost trade-offs, the manufacturer exposed the consumer to greater risk of danger than he should have." (Citation and punctuation omitted.) Id. However, in this case the product failed to perform in a reasonably safe manner for intended or foreseeable uses as the manufacturer intended. See *Center Chem. Co. v. Parzini*, supra; see also *Banks v. ICI Americas*, supra at 733; *Chrysler Corp. v. Batten*, supra at 724.

Also Ontario, in its role as a seller-dealer, may have had no duty to issue a recall warning and to remediate the dangerous known defect in design, because it has a duty only to warn of dangers actually or constructively known at the time of sale. See *DeLoach v. Rovema Corp.*, supra at 804; *Bishop v. Farhat*, supra at 206 (6). However, having issued a recall notice as seller-dealer, it has voluntarily assumed the duty to exercise ordinary care in conducting such recall.

"[A] seller of products is liable for harm caused by defects in products where: (a) . . . (2) the seller or distributor, in the absence of a recall requirement under Subsection (a) (1), undertakes to recall the product; and (b) the seller or distributor fails to act as a reasonable person in recalling the product." Restatement of Torts, 3rd,

Product Liability, § 11. This restates the existing common law in Georgia as it pertains to a person who assumes to act as a volunteer, regarding a recall of the product it sold, and who must do so in the exercise of reasonable care. See *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 837-838 (331 SE2d 899) (1985); see also *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 197 (1) (375 SE2d 117) (1988) (physical precedent only).

(g) Ontario urges that the trial court should be affirmed under the right for any reason standard. In this regard, Ontario urges that plaintiff assumed the risk of an open and obvious danger from its dangerous design. However, the design employed by Ontario had a control system, if it worked correctly as designed, which kept the operator's hands from under the cage and away from the blade opening when in operation, so that the real danger was not open and obvious to the operator. In fact, the safety design could lull the operator into believing that it was safe to place her hand under the cage and around the blade opening, because the blade could not operate without the two buttons being pushed at the same time by the operator's two hands. See *Daniels v. Bucyrus-Erie Corp.*, 237 Ga. App. 828, 829-830 (516 SE2d 848) (1999).

Plaintiff lacked knowledge of the specific danger of operating the machine, i.e., spontaneous activation of the blade without the control buttons being activated. Plaintiff had worked at Wilen's plant only ten weeks prior to her injury and believed prior to her injury that the blade could not activate without the two buttons being pushed, and such apparent safety feature did not constitute an open and obvious danger to her as a user. She had no knowledge of the prior two injuries or of the previous blade activations without the buttons being pushed. While she had a generalized concern of danger over placing her hand under the cage and across the retracted blade, she had no specific knowledge of danger and had a right to rely on Ontario's safety design of two control buttons, preventing the activation of the blade without the buttons being depressed. See *Hillman v. Carlton Co.*, 240 Ga. App. 432, 433-435 (1) (522 SE2d 681) (1999) (operator of forklift dumped from forks which suddenly gave way); *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 70-72 (1) (b) (378 SE2d 323) (1989) (voluntarily hiring a security guard to protect customers as well as property).

> In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk is the watchword of assumption of risk, and means both *actual*

and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities. As stated by Dean Prosser: In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from *a known risk arising from what the defendant is to do or leave undone.*

(Punctuation and footnotes omitted; emphasis in original.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996); see also *Muldovan v. McEachern*, 271 Ga. 805, 807-808 (2) (523 SE2d 566) (1999); *Hillman v. Carlton Co.*, supra at 433-435; *Jimenez v. Morgan Drive Away*, 238 Ga. App. 638, 640 (1) (519 SE2d 722) (1999); *Lowery's Tavern v. Dudukovich*, 234 Ga. App. 687, 690 (3) (507 SE2d 851) (1998).

[T]he standard to be applied in assessing an assumption of the risk defense is a subjective one, geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence who appears in [the completely separate defense of] contributory negligence. Thus, the extent to which a plaintiff assumes the risk of injury caused by another's action or inaction depends upon the extent to which the plaintiff subjectively comprehended the specific hazard posed, and affirmatively or impliedly assumed the risk of harm that could be inflicted therefrom. Where a plaintiff subjectively assumed only the specific risk of harm emanating from negligent conduct, recovery is barred only for injuries that were negligently inflicted.

(Punctuation and footnote omitted.) *Muldovan v. McEachern*, supra at 808 (2).

Neither the facts in the record nor the law is so clear and palpable that we can hold as a matter of law that plaintiff assumed the risk of her injury but, to the contrary, supports this Court's finding that assumption of risk is not an appropriate defense under the facts and circumstances of this case. The evidence of record shows that the plaintiff lacked both actual and subjective knowledge of the specific danger of blade activation without the buttons being pushed.

*Judgment reversed. Miller, J., concurs. Andrews, P. J., concurs specially.*

ANDREWS, Presiding Judge, concurring specially.

I agree that the trial court's grant of summary judgment in favor of Ontario Sewing Machine Company, Ltd. and Texmatic Machinery, Ltd. (the manufacturers of the machine at issue) must be reversed, but not for all the reasons stated in the majority opinion.

Ontario and Texmatic moved for summary judgment on several grounds, one of which was that, even assuming the machine was negligently designed or manufactured, the injury suffered by Regina Smith while using the machine in the employment of Wilen's Mop Manufacturing was proximately caused by acts of Wilen and not by acts of Ontario or Texmatic. In support of this claim Ontario showed that, over a year prior to Smith's injury, it sent Wilen a letter stating that: (1) because of two prior injuries suffered by machine operators at Wilen's plant, Ontario was voluntarily recalling the machine to avoid any further injuries; (2) Wilen was advised to stop using the machine; (3) Wilen would be reimbursed for what it paid Ontario for the machine; and (4) the reimbursement offer was valid for 90 days. It is undisputed that Wilen was aware of the two prior injuries, that it refused to stop using the machine, and that Smith subsequently suffered an injury similar to the two prior injuries while using the machine in the employment of Wilen. Ontario and Texmatic claimed that Wilen's refusal to stop using the machine after receiving the recall letter was an intervening act by Wilen which proximately caused Smith's injury and negated any claim that they proximately caused the injury.

In granting summary judgment to Ontario and Texmatic, the trial court addressed only this ground. The trial court found that: (1) Wilen was aware of the danger of continuing to use the equipment because of the two prior similar injuries to its employees; and (2) Wilen chose not to stop using the equipment and refused to participate in the recall because the costs of doing so, including lost profits, were too great and because Ontario refused to pay for all the costs of the recall. The trial court specifically found that whether the warning of the danger given by Ontario was sufficient to put the machine user, Smith, on notice of the danger was not the issue being addressed by the court. The trial court stated that the issue was whether Wilen had a duty to stop using the machine after receiving the recall letter and whether its refusal to do so was an intervening cause of Smith's injury which relieved Ontario and Texmatic from any liability. Finally, the trial court decided this issue by ruling that Wilen's refusal to stop using the machine was an intervening act which caused Smith's injury and severed any proximate causal con-

nection between the injury and actions of Ontario and Texmatic.

I agree in principle that a negligent failure by a business in Wilen's position to cooperate with a manufacturer's reasonable recall of a product may become the sole proximate cause of injuries sustained by an employee of the business while using the product. "A [business'] negligent failure to cooperate with a manufacturer's reasonable recall program [may become] the proximate cause of injuries sustained by [an employee of the business]. Thus, the duty of the manufacturer may be excused because of this intervening negligence of the [business]." Maleski, Ga. Products Liability (2nd ed. 1993), § 1-6. Under the present facts, however, whether Wilen's refusal to stop using the machine and cooperate in the recall was an intervening act which became the sole proximate cause of the injuries is a question of fact for the jury.

> It is well settled that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent, intervening, act of someone other than the defendant, which was not foreseeable by defendant, was not triggered by defendant's act, and which was sufficient of itself to cause the injury.

(Citations and punctuation omitted.) *Jones v. Central of Ga. R. Co.*, 192 Ga. App. 806, 807 (386 SE2d 386) (1989). Ontario's recall offered to reimburse Wilen for the actual cost of the machine if accepted within 90 days. Whether this was reasonable in light of the time constraint and the total costs the recall would have imposed on Wilen and whether Wilen's refusal to comply with the terms of the recall was foreseeable by Ontario and Texmatic are factual issues in this case. Accordingly, it is for the jury to decide whether the proximate cause of Smith's injury was solely acts of Ontario and Texmatic, or solely acts of Wilen, or a combination of those acts. *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 196-199 (375 SE2d 117) (1988).

Ontario and Texmatic also moved for summary judgment in the trial court on four other grounds which the trial court did not address in its order: (1) the sole proximate cause of Smith's injury was Wilen's failure to install recessed activation buttons on the machine; (2) Smith assumed the risk of incurring the injury; (3) the alleged defective condition of the machine was known and obvious; and (4) because Wilen substantially modified the machine prior to Smith's injury, any defect allegedly existing in the machine at the time it was sold to Wilen was not the proximate cause of the injury. Given that a judgment right for any reason will be affirmed, it is necessary to consider whether the trial court's grant of summary judgment can be upheld based on any of these additional grounds raised in the

motion. *Newsome v. Dept. of Human Resources*, 199 Ga. App. 419, 423 (405 SE2d 61) (1991).

As to the claim regarding recessed buttons for the machine, after Ontario became aware of the two prior injuries suffered by Wilen employees while operating the machine, Ontario received information that those accidents may have been caused when the employees inadvertently activated the machine cutting sequence when they leaned over the machine to grab yarn. According to this theory, the two buttons which the operator had to depress to activate the cutting sequence were designed and placed in such a manner that the operator's body could possibly lean onto and depress both buttons at the same time and thereby inadvertently activate the cutting sequence while the operator's arm or hand was in the cutting area. In order to prevent this possibility, Ontario designed new recessed buttons for the machine at its own cost which could be depressed only by use of the operator's finger and which prevented accidental activation by leaning on the machine. These buttons were shipped to Wilen over a year prior to Smith's injury, but Wilen failed to install the newly designed buttons prior to Smith's injury.

Ontario and Texmatic argued on summary judgment that, like the prior injuries, Smith's injury occurred when she inadvertently activated the cutting sequence by leaning onto the original nonrecessed buttons and that Wilen's failure to install the new recessed buttons was an intervening act that was the sole proximate cause of Smith's injury. Smith concedes on appeal that "[t]his would be a good ground for summary judgment if a lack of recessed buttons were the cause of [her] injury." But Smith points to evidence that this was not what caused her injury. Smith testified on deposition that, at the time of her injury, she was not pushing or leaning on either of the buttons and that the machine's cutting sequence spontaneously activated and cut her hand. Moreover, there was expert testimony in the record from which a jury could conclude that the machine was defectively designed or manufactured in a manner that would allow the cutting sequence to spontaneously activate without depressing the buttons. Accordingly, issues of fact precluding summary judgment remain on this claim, including resolution of the conflicting theories of what caused the cutting sequence to activate.

Ontario and Texmatic also claimed in the summary judgment motion that Smith cannot recover because evidence that she admitted knowing it was dangerous to reach over the cutting area established that she assumed the risk of the injury she incurred. However, knowing the cutting area was dangerous does not establish that Smith understood and appreciated the risk that she could be injured if the machine spontaneously activated without the buttons being pushed. *Vaughn v. Pleasent*, 266 Ga. 862, 864 (471 SE2d 866) (1996).

Summary judgment was not appropriate on this issue.

Ontario and Texmatic sought summary judgment on the additional ground that, as to Smith's claim that they failed to warn of the danger, they had no duty to warn of any danger associated with operation of the machine that was obvious or generally known or of which Smith had actual knowledge. *Daniels v. Bucyrus-Erie Corp.*, 237 Ga. App. 828, 829 (516 SE2d 848) (1999). Although Smith concedes there was no duty to warn her that she should not knowingly press the activation buttons with her hand in the cutting area, she points to evidence that the danger of being injured if the machine spontaneously activated was not known or obvious. Summary judgment was not appropriate on this issue.

Finally, Ontario and Texmatic claimed they were entitled to summary judgment because, after they sold the machine to Wilen, it was substantially modified by Wilen prior to Smith's injury. Accordingly, they claimed that the injury suffered by Smith was proximately caused not by an alleged defect in the machine as it was originally designed or manufactured by them, but by Wilen's modified version of the machine. *Talley v. City Tank Corp.*, 158 Ga. App. 130 (279 SE2d 264) (1981). The record shows, however, that whether or not the modifications at issue were done before or after Smith's injury is a contested issue of fact, and summary judgment was not appropriate.

The above issues, which were the only issues raised and addressed by the parties in the motion for summary judgment, are the only issues presented on appeal to this Court. *Fedeli v. UAP/Ga. Ag. Chem.*, 237 Ga. App. 337, 339 (514 SE2d 684) (1999). Accordingly, I do not concur in the majority's commentaries on legal issues not presented in this appeal, nor do I concur in the majority's numerous findings on disputed factual issues that are clearly for the jury in this case.

DECIDED APRIL 25, 2001 ▬

*Butler & MacDougald, Daniel MacDougald III*, for appellant.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Earl W. Gunn, Ashley P. Nichols*, for appellees.