## A98A2285. FEDELI v. UAP/GA. AG. CHEM., INC.
(514 SE2d 684)

RUFFIN, Judge.

Gino Fedeli sued UAP/Ga. Ag. Chem., Inc. (UAP) for money had and received, alleging that UAP improperly received certain checks from third parties representing payments that were actually due to Fedeli. UAP moved for summary judgment, asserting the defenses of res judicata and holder in due course. The trial court granted UAP's motion for summary judgment, and Fedeli appeals. For reasons discussed below, we affirm.

> Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the respondent, concludes that the evidence does not create a triable issue as to an essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On a motion for summary judgment under OCGA § 9-11-56, the defendant, as the moving party, may only prevail either by piercing the plaintiff's pleadings or by presenting evidence which establishes a prima facie affirmative defense. Id.

*Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508-509 (496 SE2d 732) (1997).

> Once the defendant satisfies its burden of proof by presenting evidence to support each element of the affirmative defense, the same burden of proof it would have at trial, the burden of production of evidence shifts to the plaintiff, who will survive summary judgment in the same fashion that [he] would survive a motion for directed verdict at trial, i.e., by presenting any evidence which creates a jury issue on an element of the affirmative defense. However, if the plaintiff is unable to meet this burden of production, the defendant is entitled to summary judgment as a matter of law.

(Citations and emphasis omitted.) *Garrett v. NationsBank, N.A. (South)*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997).

The facts of this case are somewhat difficult to piece together, largely because many important documents that are discussed in the depositions are not included in the record on appeal.[1] However, based

---

[1] The record reflects that Fedeli's attorney retained the exhibits used in the depositions, but did not include them when he filed the depositions with the court. See *Morrissette v. State*, 229 Ga. App. 420, 425-426 (494 SE2d 8) (1990) (burden on appellant to bring up all portions of record and evidence necessary to his appeal).

upon the evidence in the record, the relevant facts are as follows. In 1993, UAP extended credit to Nidrah Plantation, Inc. (NPI), a farming business owned by Plez Hardin, to finance its farming operations. As security for the line of credit, UAP received a security interest in crops grown by NPI on certain pieces of property. Hardin personally guaranteed NPI's obligations under the line of credit. Hardin apparently had farming relationships with several other individuals, utilizing the UAP credit for this purpose, and many of these individuals signed a hypothecation agreement giving UAP a security interest in their crops as security for NPI's loan. UAP sent notice of its lien to various cotton gins with whom Hardin did business, attaching copies of the legal descriptions from the security and hypothecation agreements showing the property on which it had a lien.

In addition to farming for himself, Hardin also custom-farmed crops for Fedeli, and Fedeli paid Hardin a certain amount per acre. Hardin grew these crops under three separate names — Gino Fedeli, Nidrah, Inc., and Swerdna, Inc.[2] Nidrah, Inc. and Swerdna, Inc. were corporations owned and controlled by Hardin. The parties apparently executed a written assignment to Fedeli of crops grown by Nidrah, Inc. and Swerdna, Inc. on certain specified property, although this document is not in the record.

When Hardin grew cotton, both for himself and for Fedeli, he would sell it to various cotton gins, including Coley Gin & Fertilizer Company, King Cotton, Ltd., and Central Georgia Cooperative, Inc. In December 1993, after becoming concerned about Hardin's debt, UAP sent letters to these cotton gins requesting that any checks relating to NPI or other listed entities that UAP believed were related to NPI be made payable jointly to UAP and such entity. Fedeli, Nidrah, Inc., and Swerdna, Inc. were among the entities listed in the letter.

King Cotton, Inc., Coley Gin & Fertilizer Company, and Central Georgia Cooperative, Inc. issued several checks payable jointly to either NPI and UAP or Nidrah, Inc. and UAP. Fedeli contends that these checks related to crops grown by Hardin for Fedeli that were not subject to UAP's lien. With respect to most of these checks, Hardin would present the check to UAP, and UAP would endorse the check and return it to Hardin. Hardin would then write a separate check to UAP, drawn on NPI's account, in an amount equal to a certain percentage of the check from the cotton gin. UAP would apply this check against NPI's outstanding indebtedness. With respect to some of the cotton gin checks, Hardin would simply endorse the

---

[2] Apparently, farming under several different names enables the farmer to receive more assistance from the government.

check to UAP and UAP would apply the check against NPI's debt. It is not clear from the record which of the cotton gin checks were retained by UAP and which were endorsed and returned to Hardin.

Fedeli filed an action in Lee County Superior Court against King Cotton, one of the cotton gins that issued checks payable jointly to UAP and Nidrah, Inc. or NPI, contending that such payment was improper. King Cotton filed a third-party complaint against UAP, claiming that, if King Cotton was liable to Fedeli, then UAP was liable to King Cotton. UAP filed a response to Fedeli's complaint against King Cotton, responding to the allegations of the complaint and asserting certain defenses to Fedeli's claim. UAP also asserted a counterclaim against Fedeli for bad faith litigation. Ultimately, Fedeli, King Cotton, and UAP filed a voluntary dismissal with prejudice of all claims and counterclaims in the action.

Fedeli then filed this action for restitution against UAP. The action is in essence a claim for money had and received, alleging that UAP improperly received money to which Fedeli was entitled. UAP moved for summary judgment based on the defenses of res judicata and holder in due course. The trial court granted summary judgment without stating the basis for its ruling.

1. *Right for any reason.* As an initial matter, we note that the only grounds asserted by UAP in its motion for summary judgment were the defenses of res judicata and holder in due course. Accordingly, we may not consider whether summary judgment would have been proper for any other reason. *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

2. *Res judicata.* UAP contends that it is entitled to summary judgment based on the doctrine of res judicata due to Fedeli's dismissal with prejudice of the previous lawsuit. With respect to claims arising out of checks issued by King Cotton, we agree.

The doctrine of res judicata is codified in OCGA § 9-12-40, which provides that

> [a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

> For a prior action to bar a subsequent action under the doctrine of res judicata, several requirements must be met: The first action must have involved an adjudication by a court of competent jurisdiction; the two actions must have an identity of parties and subject matter; and the party against whom the doctrine of res judicata is raised must have had a

full and fair opportunity to litigate the issues in the first action.

(Citations omitted.) *Fowler v. Vineyard*, 261 Ga. 454, 455 (1) (405 SE2d 678) (1991).

The law is clear that a voluntary dismissal with prejudice "operates as an adjudication upon the merits and bars the right to bring another action on the same claim." Id. at 456 (2). It is also clear that the Lee County Superior Court was a court of competent jurisdiction. Therefore, the remaining questions are whether there was an identity of parties and subject matter, and whether Fedeli had a full and fair opportunity to litigate the issue of UAP's liability in the prior action.

Fedeli asserts that, because he was not in an adversarial relationship to UAP in the prior action, there is not an identity of parties or subject matter. Fedeli notes that he did not assert any claims against UAP in the prior action; rather, UAP was brought into the action as a third-party defendant by the original defendant, King Cotton. UAP contends that it was in an adversarial position to Fedeli because it filed a response to UAP's complaint and asserted a counterclaim against Fedeli for bad faith litigation.

In *Fowler*, supra, the Supreme Court held that the existence of an adversarial relationship was necessary in order for res judicata to apply. It held that "the necessary adversarial relationship between co-parties is satisfied where the claims or defenses in the pleadings put parties in an adversarial relation to each other, even though they may also be aligned together against a third party." (Punctuation omitted.) Id. at 457 (3) (a).

OCGA § 9-11-14 (a), which sets forth the rules for third party actions, provides that

the third-party defendant . . . shall make his defenses to the third-party plaintiff's claim as provided in Code Section 9-11-12. . . . The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

In *Empire Shoe Co. v. NICO Indus.*, 197 Ga. App. 411 (398 SE2d

440) (1990), we considered the extent to which a plaintiff and a third-party defendant stand in an adversarial relationship to each other. We held that

> [f]or the purpose of defense against plaintiff's complaint, *a third party defendant is in the law suit as an adverse party to the same extent as the defendant and must act accordingly*. This assures a third party defendant complete defense protection in an action where he may be liable for the judgment in favor of the plaintiff. *A third-party defendant is entitled to participate to the fullest extent as though he had been originally a defendant*. To the extent that he fails to exercise that privilege of participation, he does so at his peril, for a *third-party defendant is bound by the adjudication of the third-party plaintiff's liability to the plaintiff*. Thus, the third-party defendant, by participating fully in the defense of the case, is entitled to a complete defense of the action and will not be prejudiced by any lack of diligence on the part of the original defendant.

(Citations and punctuation omitted; emphasis supplied.) Id. at 412 (1).

In the prior action, UAP participated fully in defense of the case, filing a response to Fedeli's complaint denying that it had any obligation to return the proceeds of the checks. UAP also filed a counterclaim against Fedeli for bad faith litigation, thus placing the parties in a directly adversarial relationship with respect to such claim.

As *Empire Shoe Co.* makes clear, UAP was in an adversarial relationship to Fedeli in the prior suit, because UAP faced the prospect of liability in the event Fedeli was successful in his claim against King Cotton. Fedeli cites no authority for the proposition that, although UAP was in an adversarial relationship to him, he was not in an adversarial relationship to UAP. Under OCGA § 9-11-14 (a), "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fedeli's claim against King Cotton arose out of the same transaction or occurrence as his claim against UAP — i.e., the allegedly wrongful inclusion of UAP as a joint payee on King Cotton's checks. Therefore, Fedeli could have asserted a claim against UAP in the prior lawsuit, but elected not to do so. Under all of these circumstances, we conclude that the parties were in a sufficiently adversarial relationship to invoke the doctrine of res judicata.

The next question that we consider is whether there was such an identity of subject matter that the prior action constituted an adjudi-

cation on the merits of Fedeli's claim against UAP. In *Piedmont Cotton Mills v. Woelper*, 269 Ga. 109, 110 (498 SE2d 255) (1998), the Supreme Court considered the issue of "what constitutes an 'adjudication on the merits' for res judicata purposes." It held that

> an "adjudication on the merits" does not require that the litigation should be determined on the merits, in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases. Thus, it is only where the merits were not *and* could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were *or* could have been determined, then the defense is valid.

(Citations and punctuation omitted.) Id.

It is clear that Fedeli could have raised his claim against UAP in the prior action. As discussed above, OCGA § 9-11-14 (a) allows the plaintiff to "assert any claim against a third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Because Fedeli's claim against UAP arose out of the same transaction or occurrence as his claim against King Cotton, Fedeli could have brought such claim in the prior suit but elected not to do so. Although Fedeli argues that OCGA § 9-11-14 (a) is permissive, and not mandatory, this does not prevent the application of res judicata. See *Fowler*, supra at 459 (5) ("res judicata bars a party who foregoes an opportunity to file a permissive cross-claim from bringing the claim in a subsequent action").

Because Fedeli had a full and fair opportunity to litigate his claims in the prior action, the voluntary dismissal of that action precludes Fedeli from reasserting any claims against UAP relating to the checks issued by King Cotton. However, res judicata does not prevent Fedeli from bringing an action against UAP with respect to checks issued by the other cotton gins, Coley Fertilizer and Central Georgia Cooperative, as such an action arises out of different transactions than Fedeli's claim against King Cotton.

3. UAP contends that it was entitled to summary judgment as a holder in due course. Due to our holding in Division 2, it is only necessary to consider this defense with respect to claims arising out of the checks issued by Coley Fertilizer and Central Georgia Cooperative. Each of these checks was made payable jointly to UAP and NPI.

A holder of a check is a holder in due course if he takes the check for value, in good faith, and without notice that it is overdue or has

been dishonored or of any defense against or claim to it on the part of any person. OCGA § 11-3-302 (1); see also *Dal-Tile Corp. v. Cash N' Go*, 226 Ga. App. 808, 809-810 (1) (487 SE2d 529) (1997) (physical precedent only).[3] "To be effective notice must be received at such time and in such manner as to give a reasonable opportunity to act on it." OCGA § 11-3-304 (6). A payee may be a holder in due course, provided that it meets the requirements set out in the statute. OCGA § 11-3-302 (2); *Hall v. Westmoreland, Hall & Bryan*, 123 Ga. App. 809, 811 (182 SE2d 539) (1971). We analyze each of these issues in turn.

(a) *For value.* With respect to each of the checks accepted by UAP, UAP took the checks as payment on NPI's outstanding indebtedness. Accordingly, it took the checks "for value." See OCGA § 11-3-303 (b); *Southern Dev. Co. v. Shepco Paving*, 206 Ga. App. 535, 538 (3) (426 SE2d 234) (1992) (valid consideration where note given in payment of antecedent debt).

(b) *Without notice of claim.* The next question is whether UAP took the checks without notice that Fedeli had a claim to the checks or the proceeds thereof. See *Fulton Nat. Bank v. Delco Corp.*, 128 Ga. App. 16, 19 (2) (195 SE2d 455) (1973) ("claim" includes not only claim of legal title to instrument, but also claims of right against the instrument or its proceeds).

OCGA § 11-3-304 provides that a purchaser has notice of a claim if (1) the face of the instrument "call[s] into question its validity, terms, or ownership or . . . create[s] an ambiguity as to the party to pay," (2) "[t]he purchaser has notice that the obligation of any party is voidable in whole or in part, or that all parties have been discharged," or (3) the purchaser "has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty." OCGA § 11-3-304 (1) and (2). None of these circumstances is present in this case.

Under OCGA § 11-1-201 (25), a person has "notice" of a fact when (1) he has actual knowledge of it, (2) he has received a notice or notification of it, or (3) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

Fedeli presented no evidence that UAP had actual knowledge of his alleged claim to the check proceeds. Hardin testified that he did not tell UAP the checks could be subject to a possible claim by Fedeli. Candler Bennett, UAP's credit manager who handled the transac-

---

[3] The parties agree that, because the acts in question took place before the effective date of the 1996 amendments to Article 3 of the UCC, the prior version of the statute applies in this case. See Ga. L. 1996, p. 1306, § 3. All citations to the UCC in this opinion refer to the pre-1996 amendments version.

tions in question, testified that UAP had no knowledge that Fedeli had any interest in the checks presented by Hardin, which were made payable to NPI and UAP. Steve Williams, another UAP representative who averred that he had personal knowledge of the matters in question, also testified that UAP had no notice of any claim by Fedeli or anyone else at the time the checks were negotiated. Williams testified that the first notice UAP received of Fedeli's claim was in an April 24, 1994 letter from Fedeli's counsel. However, because such notice was not received until after the checks had been negotiated, it cannot be considered effective. See OCGA § 11-3-304 (6).

There was also no evidence that UAP had reason to know of Fedeli's claim to the check proceeds. The checks were not payable to Fedeli, but to NPI, a corporation controlled by Hardin. It is undisputed that UAP had a lien on crops grown by NPI, its debtor. There is no evidence that Hardin grew any crops for Fedeli in the name of NPI, or that Fedeli had any interest in crops grown by NPI. Indeed, Fedeli admitted in his deposition that he did not have an assignment of crops grown by NPI. Because Fedeli failed to present evidence showing that the checks in question were in payment for crops in which he had an interest, he failed to show that he in fact had a claim to the check proceeds, much less that UAP had notice of such claim.

(c) *Good faith.* The final issue for purposes of determining whether UAP was a holder in due course is whether it took the checks in good faith. Under the UCC, good faith is defined as "honesty in fact in the conduct or transaction concerned." OCGA § 11-1-201 (19). See *Dal-Tile Corp.,* supra at 810. There was no evidence that UAP acted dishonestly in the transactions concerned. Although UAP sent a letter to the various cotton gins requesting that payments relating to NPI be made payable jointly to NPI and UAP, it is undisputed that UAP had a lien on crops grown by NPI, and there is no evidence that UAP had notice of any claim by Fedeli to such crops or the proceeds thereof.

Because UAP met all the requirements specified in OCGA § 11-3-302 (1), it qualified as a holder in due course with respect to each of the checks issued by Coley Gin and Central Georgia Cooperative. With respect to certain of these checks, UAP apparently retained them and applied them against NPI's outstanding debt. With respect to other checks, UAP endorsed and returned them to NPI in exchange for a check in a lesser amount drawn on NPI's account. To the extent that it qualified as a holder in due course of the cotton gins' checks, UAP clearly qualified as a holder in due course of the checks issued by NPI, as it had no notice of any claim by Fedeli to these checks.

Fedeli contends that, even if UAP qualifies as a holder in due

course of the checks, it is still subject to an action for restitution. OCGA § 11-3-305 (1) provides that a holder in due course takes an instrument free from "[a]ll claims to it on the part of any person." Fedeli argues that he does not claim an entitlement to the checks themselves, but to the proceeds thereof. However, the term "claims" includes "not only claims of legal title, but all liens, equities, or other claims of right against *the instrument or its proceeds*. It includes claims to . . . *recover the instrument or its proceeds*." (Punctuation omitted.) *Fulton Nat. Bank*, supra, 128 Ga. App. at 19 (2). Because Fedeli's claim for restitution is a claim to recover the proceeds of the checks, UAP is protected by the holder in due course doctrine. See, e.g., *Dairyman's State Bank v. Tessman*, 16 Wis.2d 314 (114 NW2d 460, 462) (1962) (holder in due course not required to repay proceeds of instrument under theory of money had and received). Accordingly, the trial court did not err in granting UAP's motion for summary judgment.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 16, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 — 

*Ellis, Easterlin, Peagler, Gatewood & Skipper, Benjamin F. Easterlin IV*, for appellant.

*Gardner, Willis, Sweat & Goldsmith, Lewis R. Lamb*, for appellee.