A10A2105. KANE et al. v. LANDSCAPE STRUCTURES, INC.
(709 SE2d 876)

BLACKWELL, Judge.

Steven Kane, who was nine years of age at the time, was injured when he fell from playground equipment that he was attempting to climb in a Gwinnett County park. Like most children nine years of age, Steven appreciated the obvious risk of falling that is associated with climbing to high places, and he voluntarily chose to assume the risk. Consequently, we affirm the grant of summary judgment to the manufacturer of the playground equipment, Landscape Structures, Inc.

Landscape Structures designed the playground equipment from which Steven fell—known as the "Infant Maze"—for children between the ages of approximately eighteen months and three years. The structure consists of several vertical panels, each of which is approximately 31 inches in height, has cutouts of various shapes and sizes for the entertainment of toddlers, and has handholds to help toddlers maintain their balance as they play. The structure also features a pitched roof—which is, at its peak, approximately seven feet in height—that is mounted atop four posts and covers some of the panels. This photograph depicts the structure as it appeared in

---

[13] See *In the Interest of J. B.*, supra.

Mountain Park on the day that Steven fell while standing atop one of the panels:

Steven and his family visited Mountain Park on March 30, 2006. While his parents and sister attended a softball game, Steven and his brother, who was 13 years of age at the time, went to a nearby playground, which had play equipment for children of all ages, including the "Infant Maze" for toddlers and swings, slides, and other structures for older children. Steven had visited the playground on many occasions, and his father said that Steven and his brother could visit the playground so long as they remained within his sight, although the father acknowledged that he "really never paid attention to [the children] once they were in the playground."

After playing a game of tag with some older children, Steven noticed that several of them had climbed atop the "Infant Maze." According to his brother, children between the ages of nine and twelve years often climbed the structure, and his parents testified that they too had seen other children climb atop the "Infant Maze" and that, on the day Steven fell, they saw some children sitting atop the structure and jumping from it. Steven denied that he had tried to climb the structure before the day he fell, but his brother said that Steven had tried unsuccessfully to climb it on two prior occasions.

In any event, Steven knew that the "Infant Maze" was not designed for children of his age, admitting that it obviously is intended for "little kids." Steven also knew that his mother would "probably not" approve of him climbing it. Indeed, his mother had

warned him before about the danger associated with climbing various things, including structures that are not as high as the roof of the "Infant Maze." And his parents testified that, as Steven suspected, they would not allow their children to climb atop the "Infant Maze." Even their own expert witness in this case admitted that Steven "had some awareness of the fact that [climbing to the roof of the "Infant Maze"] was something that wasn't intended by the manufacturer."

Encouraged by the older children atop the structure, Steven attempted to climb to its roof. Steven acknowledged that it is "fair to say" that the roof of the structure is not something onto which one ought to climb, but he explained that the "Infant Maze" did not bear any warnings about the danger of climbing it, that "everyone else was climbing on it," and that he "wasn't really thinking because [he was] a kid." The older children told him to use the horizontal handholds to climb atop a panel, and he did so. He then was able to stand upright atop the panel—which is approximately one inch in width—and while standing with his left foot on the panel, he swung his right foot upward, toward the roof, and simultaneously reached with his right hand toward the older children atop the roof, so that they could pull him up. Steven says that he did not think at the time that he was likely to fall as he attempted to climb from the panel onto the roof, but his left foot slipped, and he fell onto a panel below. As a result, Steven sustained serious injuries.

The Kanes filed a lawsuit against Landscape Structures and others, seeking to recover damages for the losses that the family sustained as a result of Steven's fall. The Kanes asserted claims against Landscape Structures for negligent design of the "Infant Maze" and for failure to warn of the dangers associated with climbing it. Following discovery, Landscape Structures moved for summary judgment, arguing, among other things, that Steven assumed the risk of falling from the structure when he attempted to climb it. The trial court held a hearing on the motion and ultimately granted summary judgment to Landscape Structures. Based on the undisputed facts in the record, the trial court did not err in doing so.

When a motion for summary judgment is premised on the existence of an affirmative defense—such as assumption of the risk—the defendant must come forward with proof sufficient to establish each element of the affirmative defense. *Fedeli v. UAP/Ga. Ag. Chem.*, 237 Ga. App. 337, 337 (514 SE2d 684) (1999). If the defendant does so, the plaintiff then must come forward with some evidence that shows a genuine, disputed issue of fact as to some element of the affirmative defense. Id. See also *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). "[I]f the plaintiff is unable to meet this burden of production, the defendant is entitled

to summary judgment as a matter of law." *Fedeli*, 237 Ga. App. at 337 (citation and punctuation omitted). Although assumption of the risk often presents a question for the jury, the issue should be decided by the court as a matter of law "where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion." *Tennison v. Lowndes-Echols Assn. &c.*, 209 Ga. App. 343, 344 (433 SE2d 344) (1993).

To establish that Steven assumed the risk of falling from the "Infant Maze," Landscape Structures was required to come forward with evidence establishing that "(1) [Steven] had some actual knowledge of the danger; (2) he understood and appreciated the risks associated with the danger; and (3) he voluntarily exposed himself to the danger." *Sayed v. Azizullah*, 238 Ga. App. 642, 644 (519 SE2d 732) (1999). The specific danger of which a plaintiff must be actually aware for purposes of assumption of the risk is "the specific, particular risk of harm associated with the activity or condition that proximately causes injury," *Sones v. Real Estate Dev. Group*, 270 Ga. App. 507, 509 (1) (606 SE2d 687) (2004), which, in this case, is the danger of falling from an elevated place onto some object below. The Kanes contend on appeal that the evidence does not show that Steven had actual knowledge of, and appreciated, the danger of falling from the "Infant Maze" onto a panel beneath him, and the dissent agrees, concluding that, while Steven may have understood the general risk of falling, the evidence is less than "plain and palpable" that he had a particularized and subjective awareness of the risk involved in climbing the structure, particularly given its "seemingly innocuous" appearance and that he had not observed any other children fall from the structure. In other words, the Kanes assert that the evidence is insufficient to prove that Steven knew that standing atop a narrow, vertical panel on one foot while trying to climb onto the roof of the playground structure several feet above—a roof that, as Steven admitted, is not meant for climbing—involves a risk of falling onto a visible panel beneath the roof. In the light of the undisputed evidence in the record, the relevant law, and the dictates of common sense, we find that the trial court properly rejected these contentions and awarded summary judgment to Landscape Structures.

Although the law does not expect children always to appreciate dangers to the same extent as adults, the Georgia courts have recognized that children as old as Steven are quite capable of appreciating certain obvious dangers. See, e.g., *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465, 465 (314 SE2d 444) (1984); *O'Neal v. Sikes*, 271 Ga. App. 391, 392 (609 SE2d 734) (2005); *Spooner v. City of Camilla*, 256 Ga. App. 179, 182 (2) (a) (568 SE2d 109) (2002); *Stewart v. Harvard*, 239 Ga. App. 388, 397 (4) (b) (520 SE2d 752)

(1999); *Riley v. Brasunas*, 210 Ga. App. 865, 867 (1) (438 SE2d 113) (1993). And for more than 50 years, the Georgia courts consistently have held that the danger associated with climbing, or jumping from, an elevated place is so obvious that a young child can be found as a matter of law to sufficiently appreciate the danger,[1] at least in the absence of evidence of a special circumstance—whether a special circumstance of the child or the place from which the child falls—that renders the child unable to appreciate the danger. As this Court explained in 1956:

> No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly [seven] years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement of Torts, § 339, clause (c), of their "immature recklessness," but [a defendant] is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type.

*Augusta Amusements v. Powell*, 93 Ga. App. 752, 757 (92 SE2d 720) (1956) (punctuation omitted). See also *O'Neal*, 271 Ga. App. at 392 (concluding that nine-year-old child assumed the risk of falling from a tree, which the child climbed to use a rope swing after watching other children do the same); *Nunn v. Page*, 265 Ga. App. 484, 485 (1) (594 SE2d 701) (2004) (concluding that four-year-old child assumed the risk of falling from a trampoline while playing a game of chase on the trampoline); *Riley*, 210 Ga. App. at 867 (1) (concluding that seven-year-old assumed the risk of falling when he participated in a game that involved jumping from a mini-trampoline to a chin bar attached to a door frame).

We have no reason in this case to doubt that Steven is a child of sufficient intelligence to appreciate the obvious danger of falling. He admitted that his mother had warned him before about the dangers associated with climbing things and that he did not think his mother would have wanted him to climb the "Infant Maze." And nothing about the "Infant Maze" would have led Steven to conclude that he

---

[1] A child also can be held as a matter of law to have knowledge of the dangers associated with fire and bodies of water, such as swimming pools and lakes. See *Riley*, 210 Ga. App. at 867 (1). See also *Spooner*, 256 Ga. App. at 182 (2); *Stewart*, 239 Ga. App. at 396-397 (4) (b).

could not fall from the structure or that, if he did, he could not be hurt. He testified that he knew the structure was not intended for climbing and that it was designed, instead, for younger children.[2] And the panel onto which he fell was open and visible, and its hardness would have been obvious to a child that had climbed atop such a panel,[3] which the Kanes do not dispute. Although he said that he did not think he would fall from the "Infant Maze," this testimony merely reflects his assessment that a fall was unlikely, not a denial of the self-evident truth that a fall from a high place—and the injuries that might be sustained as a result—are possible.[4] Accordingly, we must conclude that Steven sufficiently appreciated the danger that he might fall from the "Infant Maze" and be injured and, consequently, that summary judgment for Landscape Structures was appropriate.

In concluding otherwise, the dissent relies on our decision in *Atlanta Affordable Housing Fund Ltd. Partnership v. Brown*, 253 Ga. App. 286 (558 SE2d 827) (2002), but that case is quite distinguishable. In *Brown*, we affirmed a jury verdict in favor of a nine-year-old child, who was struck by a truck as she ran across a driveway. We rejected the contention in that case that the trial court had erred when it refused to instruct the jury on assumption of the risk, explaining:

> While the defendants proved that the nine-year-old plaintiff was generally aware of the risk of crossing streets or driveways and being hit by moving vehicles and the need to stop and look, there existed no evidence that the child saw or was aware of the approach of the specific truck that hit her when she darted out across the driveway, *because a van parked in a no-parking area of the [apartment] complex blocked her view of the approaching truck, and she had seen her friend just ahead of her safely race across the driveway*

---

[2] The dissent refers to the seemingly innocuous nature of the equipment. Playground equipment, of course, need not look like a deathtrap to suggest to a nine-year-old child that climbing it is a bad idea. And Steven admitted that he knew that the "Infant Maze" was not meant for climbing.

[3] The record is not clear about whether Steven fell onto the panel on which he had been standing or another, adjacent panel.

[4] The fact that Steven had seen older children successfully ascend the "Infant Maze" is no reason to doubt that he appreciated the danger involved. That a child sees other children swim in a lake without drowning, play around fire without being burned, and climb to high places without falling does not make the obvious risk involved in such activities any less apparent, even if it causes the child to think that his probability of suffering injury as a result of such activities is less than it actually is. But assumption of the risk does not require an accurate assessment of the precise probability that a danger will be realized and an injury sustained, only an appreciation that the danger exists.

*without incident.* Plaintiff knew generally that there was a danger in crossing without looking where vehicles drove. *However, the presence or absence of moving vehicles in the driveway was a constantly changing situation so that specific knowledge of the condition could not pre-exist without specific subjective observation at any given time to determine the presence or absence of danger.* Thus, the child had no subjective knowledge of the danger from the approaching truck that hit her; therefore, the first element of the defense of assumption of the risk was not proved.

253 Ga. App. at 287-288 (1) (emphasis supplied). In other words, although the child in *Brown* appreciated that running into a street or driveway *sometimes* poses a danger of being struck by traffic—when, and only when, there is traffic operating upon the street or driveway—the driveway on which the child was struck did not always have traffic, and the child was not aware that traffic was moving upon it when she was struck.[5] Gravity, unlike traffic on a quiet street or driveway, is always present, and so, unlike a quiet street or driveway that only sometimes poses a danger to pedestrians of being struck by traffic, climbing something *always* poses a danger of falling from it.

Because the record in this case shows as a matter of law that Steven assumed the risk associated with climbing the "Infant Maze," we affirm the entry of summary judgment for Landscape Structures.[6]

*Judgment affirmed. Smith, P. J., Andrews, Mikell and Dillard, JJ., concur. Barnes, P. J., and Adams, J., dissent.*

BARNES, Presiding Judge, dissenting.

I respectfully dissent. We do not presume that a plaintiff has assumed the risk of activities or conditions he does not know about, and "[m]oreover, he must not only know of the facts which create the danger, but he must comprehend and appreciate the nature of the danger he confronts." *Beringause v. Fogleman Truck Lines*, 200 Ga.

---

[5] About the dissent's accusation that we would have children cross streets without stopping to look both ways, we simply note that it brings to mind the words of Justice Jackson: "The technique of the dissenter often is to exaggerate the holding of the Court beyond the meaning of the majority and then to blast away at the excess. So the poor lawyer with a similar case does not know whether the majority opinion meant what it seemed to say or what the minority said it meant." Robert H. Jackson, *The Supreme Court in the American System of Government,* pp. 18-19 (1995).

[6] Given that assumption of risk is an absolute defense to liability under any theory of negligence, we need not consider the Kanes' claims that Landscape Structures negligently designed the "Infant Maze" or that it failed to properly warn of the dangers associated with the use of the "Infant Maze." See *Sones,* 270 Ga. App. at 509 (2).

App. 822, 824 (4) (409 SE2d 524) (1991).

As the majority notes, here, the older children routinely climbed on the Infant Maze, using the handholds as foot rungs to climb onto the pitched roof. They would then jump off the roof. The point of making the climb was to then jump off the roof. Although the majority relies on case law that holds, as a matter of law, that the dangers of falling from a high place are so obvious that young children can appreciate the inherent risk, in this case, young Steven did not fall from the roof of the Infant Maze. The assumption of risk question in this case is not whether Steven knew he might fall from the roof — the children routinely climbed the Infant Maze using the handholds as rungs with the specific intent of then jumping from the roof. In fact, they anticipated that gravity would operate as it always had — after climbing up, they would be able to then jump down. Here, the issue is whether Steven had the requisite knowledge and understanding of the dangers and risks involved in *climbing* the Infant Maze.

As this Court has held: "[W]hether a child assumed the risk is peculiarly a question for the jury[, unless] the facts are so plain and palpable that they demand a finding by the court as a matter of law. . . ." (Citations and punctuation omitted.) *Pearson v. Small World Day Care Center*, 234 Ga. App. 843, 845 (2) (b) (508 SE2d 200) (1998).

> The doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury.

(Citations and punctuation omitted.) *Young v. Brandt*, 225 Ga. App. 889, 891 (3) (485 SE2d 519) (1997).

> [T]here is no legal bar to applying assumption of the risk, as a matter of law, to the conduct of a child between the[ ] ages [of seven and fourteen] when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and the child voluntarily chose to run the risk.

*Spooner v. City of Camilla*, 256 Ga. App. 179, 182 (2) (a) (568 SE2d 109) (2002). However, "[k]nowledge of the risk is the watchword of assumption of risk, and means both *actual* and *subjective* knowledge

on the plaintiff's part." *Atlanta Affordable &c. Partnership v. Brown*, 253 Ga. App. 286, 286-287 (1) (558 SE2d 827) (2002).

In his deposition, Steven said that on the day of the fall, other children who were already sitting on the roof of the Infant Maze encouraged him to try the climb, and instructed him on how to climb up to the roof. The children told him to place his feet on the horizontal handholds and to use the panel that extends away from the roof. As Steven perched on the panel, he extended one leg and arm toward the roof, lost his balance, and fell, straddling the narrow panel which resulted in serious, life-altering injuries.[7]

Steven's brother explained that the trick to successfully navigating the roof was "to get on the white [horizontal] rails and then step on the plastic piece and pull yourself up there." The older brother said that Steven was unsuccessful in two earlier attempts to climb the roof because he "would try to climb on the vertical handle side" instead of the side with the horizontal handles.

In *Atlanta Affordable*, a nine-year-old child was injured when she ran from behind a van parked in a no-parking zone into the path of a truck, and was struck because the van had blocked her view of the approaching truck. Id. at 286. On appeal, we found that, although "a generalized risk may be assumed, i.e., not stopping and looking both ways before crossing a street or driveway," the child never saw the truck that hit her so that she was unaware of actual risk. Id. at 287. We further held that while the generalized risk of not stopping and looking both ways could be assumed, "for the defense of assumption of the risk to apply in this case, there must be a particularized and subjective awareness of the actual danger of the approaching truck as well, which is the subjective risk assumed of racing against the truck's approach." Id. More generally, the child could not undertake the subjective risk of racing against the truck if she did not know that the truck was coming. Seemingly, the majority would have the child look both ways before crossing the street only on busy streets, because the danger of being struck is not present "on a quiet street." Parents, however, recognize that the danger of being struck by vehicles is ever present and thus caution their children to always look both ways before entering a roadway. Thus, although in *Brown*, "the defendants proved that the nine-year-old

---

[7] Steven's parents rushed him to the hospital after discovering that the boy's bath water was "full of blood." Steven required several surgical procedures after the accident, including the placement of a catheter in his bladder because of the extensive damage to his urethra. Long-term complications include possible sterility, which cannot be determined until Steven goes through puberty. Steven also experiences incontinence, pain, and problems with urine flow which require the periodic removal of the scar tissue that builds up around his "urethra tube."

plaintiff was generally aware of the risk of crossing streets or driveways and being hit by moving vehicles and the need to stop and look," there was no evidence that the child had "subjective knowledge of the danger from the approaching truck." Id.[8]

Here, while certainly Steven may have understood the general risk of falling, that understanding is irrelevant to whether he had a particularized and subjective awareness of the risk involved in *climbing* on this playground equipment, particularly given its seemingly innocuous nature, the placement of the horizontal bars, and that he had observed no other children fall from undertaking the climb. In fact, Steven's older brother had successfully climbed the Infant Maze five times, and other children between the ages of nine and twelve would climb the apparatus as well. Steven had also attempted the climb twice before without injury.[9] The "specific knowledge of the condition could not pre-exist without specific subjective observation at any given time to determine the presence or absence of danger." *Atlanta Affordable*, 253 Ga. App. at 287 (1). Each child approaching that apparatus will have a different capacity to comprehend and appreciate the danger of undertaking the climb; thus, whether Steven appreciated the danger in climbing the Infant Maze is a question of fact for a jury to determine.

Accordingly, as issues of material fact exist as to whether Steven had actual knowledge of the risks associated with climbing the Infant Maze such that he assumed those risks, I respectfully dissent.

I am authorized to state that Judge Adams joins in this dissent.

DECIDED MARCH 30, 2011 — ▮▮▮▮▮▮▮▮

*Swift, Currie, McGhee & Hiers, Cynthia L. Parker, Douglas A. Bennett*, for appellants.

---

[8] The majority correctly notes that children appreciate certain inherent risks associated with fire, water and falling. Fortunately, our laws recognize that although children might be cognizant on a very general level about certain dangers, their capacity to comprehend and appreciate the danger of certain activities is quite different from the capacity of adults, hence safety latches on lighters, harnesses on climbing walls, and lifeguards at pools.

[9] Kane's expert explained that the horizontal handholds on the side panels of the Infant Maze allowed children to use them as rungs on a ladder, in violation of certain Consumer Product Safety Commission ("CPSC") guidelines and American Society for Testing and Materials ("ASTM") standards. The handholds could be installed either vertically or horizontally, and if installed horizontally, they create an unreasonably dangerous condition. The expert detailed that "the horizontal rungs create[ ] a ladderlike climber that leaves a child stranded on the edge of a metal panel without a platform for the child to exit onto for balance and stability . . . [and reflected] a clear failure to adequately address the safety of children."

*Holland & Knight, John M. Hamrick, Leland H. Kynes*, for appellee.