**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A1385. KENSINGTON PLACE OWNERS ASSOCIATION, INC. et al. v. THOMAS et al.

PHIPPS, Presiding Judge.

Tenita Thomas, individually and as administrator of the estate of her minor son, Christopher Baxter, filed a wrongful death action against Kensington Place Owners Association, Inc. and Community Association Management, LLC (collectively "Kensington Place") alleging that Kensington Place was liable for fatal injuries Baxter sustained when a dead tree located on property owned by Kensington Place Owners Association fell on him. Kensington Place moved for summary judgment, which the trial court denied. We granted Kensington Place's application for interlocutory appeal from that ruling. Because the evidence reveals that Baxter

assumed the risk of his injuries as a matter of law, we reverse the judgment and remand the case with direction.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.[1]

Viewed in a light favorable to Tenita Thomas and Baxter's estate (collectively "Thomas"), the facts show the following. Baxter, who was 13 years old, lived in the Kensington Place subdivision, as did his friends, 12-year-old Matthew Mallory, 13-year-old Dakota Moreland, and Carlos Lamar. On April 10, 2008, either Baxter or Moreland decided that it would be "cool to push this really old tree over" in the woods of the subdivision. Baxter, Mallory, Moreland, and Lamar entered a wooded, common area located beyond Mallory's family's rear property line, where there was a tree which appeared to be dead; Mallory had concluded that the tree was dead

---

[1] *McCrary v. Middle Ga. Mgmt. Svcs.*, 315 Ga. App. 247, 248 (726 SE2d 740) (2012) (footnotes and punctuation omitted).

2

because, "[i]t just looked really old and - - and dead. And all the other trees around it were green and it was like just old."[2]

Baxter, Moreland and Lamar alternated between pushing the tree and watching the others push it. Mallory recorded the incident using the video camera on his cell phone. Some younger children gathered to watch. Baxter, Mallory and Moreland "tried to get [the younger children] out of there." Moreland deposed that the younger children were told to move back for "[s]afety reasons," because the tree could fall and he did not want them to get hurt.

After the children had pushed the tree for about four minutes, the tree started to move or rock. Everybody either ran or moved "to the side." When asked if he knew what Baxter said at that point, Mallory replied, "I guess, you know, that . . . trees can fall down" when pushed.

Moreland resumed pushing the tree, and Mallory stood a few feet away from the tree. Baxter took the phone from Mallory, pointed the camera at him, and said something to the effect of, "say hello, this might be your last second alive."[3] After the

---

[2] Kensington Place does not dispute that the tree was dead.

[3] Thomas does not dispute that Baxter made this comment, but asserts that Baxter was merely joking when he made it.

children pushed the tree for about ten minutes, it began to make cracking noises, and someone announced that the tree was cracking. Everybody moved away from the tree. Seconds later, Baxter and Mallory walked back toward the tree. Moreland and Lamar pushed the tree again, then Baxter, Moreland and Lamar all pushed the tree.

Mallory instructed his younger brother to move out of the way "because I didn't want him to get hurt just in case" the tree fell. Moreland deposed that the children continued to push the tree; when asked what he thought would happen if the tree was pushed long enough, Moreland replied that he thought it might fall.

While Moreland and Lamar were pushing the tree, about 18 minutes after the children had started pushing it, Mallory heard the tree crack again. Mallory was about eight to ten feet away from the tree, and Baxter was about the same distance away from the tree. Moreland yelled for the children to run. As the tree started falling, the children either jumped to one side of the tree or ran. The tree struck and fatally injured Baxter.

Thomas sued the homeowners' association and the company that maintained the subdivision's common grounds. Thomas alleged, inter alia, that Kensington Place knew or should have known that dead trees on the property presented a danger to people lawfully on the property, and that it had failed to properly inspect the property

4

or to take action to protect people lawfully thereon. Kensington Place sought summary judgment on a number of bases, including assumption of the risk. The trial court denied the motion without explanation.

> The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.[4]

In order to establish the defense of assumption of the risk, Kensington Place was required to show that Baxter "(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[5]

With respect to children between the ages of seven and fourteen, such as Baxter, "there is no legal bar to applying [the doctrine of] assumption of the risk, as a matter of law . . . when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and

---

[4] *Sones v. Real Estate Dev. Group, Inc.*, 270 Ga. App. 507, 508 (1) (606 SE2d 687) (2004).

[5] *O'Neal v. Sikes*, 271 Ga. App. 391, 392 (609 SE2d 734) (2005) (citation and punctuation omitted).

the child voluntarily chose to run the risk."[6] "In assessing whether [Baxter] had the requisite knowledge of the danger and appreciation of the risks, we apply a subjective standard and look to what he knew, understood, and appreciated."[7] "Although assumption of the risk often presents a question for the jury, the issue should be decided by the court as a matter of law where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion."[8]

In this case, the evidence shows that Baxter knew, understood and appreciated the specific risks involved in the children's undertaking. For example, Baxter's comments after the tree began cracking and moving - that a pushed tree could fall and that it might be Mallory's "last second alive" - show that he knew, understood and appreciated the fact that the tree could fall and that a falling tree could injure (or kill) a person. Moreover, Baxter and the older children tried to get the younger children to move away and, with Baxter present, the older children told the younger ones to move away from the tree minutes before it fell.

---

[6] Id. (punctuation and citation omitted).

[7] *Fowler v. Alpharetta Family Skate Center, LLC*, 268 Ga. App. 329, 332 (3) (601 SE2d 818) (2004).

[8] *Kane v. Landscape Structures*, 309 Ga. App. 14, 17 (709 SE2d 876) (2011) (citation and punctuation omitted); *O'Neal*, supra; *Fowler*, supra.

6

To support her position that genuine issues of material fact remain for resolution by a jury, Thomas cites in her brief evidence that Baxter lacked experience with falling trees and thus did not understand the specific dangers presented; and she cites evidence that children of Baxter's age are incapable of evaluating and consenting to risks (due to the lack of frontal lobe development of the brain) and are more susceptible to peer influences than are adults.

This evidence, however, does not negate an assumption of the risk defense. In Georgia, regarding children between the ages of seven and fourteen in assumption of risk cases, issues of due care and capacity hinge on the circumstances of the case and the capacity of the particular child.[9] Thus, as stated above, we look to what Baxter knew, understood, and appreciated, and whether the danger was an obvious one.[10] The expert evidence Thomas cites concerns the brain activity of adolescents generally, based on evidence that the adolescent brain is not fully developed; notably, the expert also testified that most adolescents engage in risky behavior even when they know the risks. There was evidence that Baxter's maturity level and decision-making ability were about one year below his chronological age of 13 years 11

---

[9] *Stewart v. Harvard*, 239 Ga. App. 388, 397 (4) (b) (520 SE2d 752) (1999).

[10] See *Kane*, supra; *Fowler*, supra.

7

months. As discussed above, the evidence showed that Baxter knew, understood and appreciated the risks of pushing over the dead tree.

Thomas's assertion that a child of Baxter's age is incapable of assuming the risk of injury is contrary to Georgia law.[11] "Although the law does not expect children always to appreciate dangers to the same extent as adults, the Georgia courts have recognized that children as old as [Baxter] are quite capable of appreciating certain obvious dangers";[12] as one of Thomas's experts commented, the danger presented by a falling tree is one her five- or six-year-old would appreciate. There is no evidence that 13-year-old Baxter was not of sufficient intelligence to appreciate the obvious danger presented in this case. Indeed, evidence that he tried to get the younger children to move back, that he was present when the older children told the younger children to move back, that he moved away from the tree when it first started to move or rock, that, like the other children, he moved away from the tree as it began to fall, and that he commented during the incident about falling trees and injury, show that he knew, understood and appreciated the risk of injury from a falling tree.[13]

---

[11] See, e.g., *O'Neal*, supra; *Fowler*, supra.

[12] *Kane*, supra at 17 (citations omitted).

[13] See *Fowler*, supra at 332 (3).

As we have previously recognized, "[i]t may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because . . . of their immature recklessness, but a defendant is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type."[14] Under the circumstances presented here, Baxter is deemed to have assumed the risk as a matter of law.[15]

To further support her position that the assumption of risk doctrine is inapplicable, Thomas points to Mallory's and Moreland's testimony that the children were not taking what they were doing seriously, they doubted that the tree would fall, and they did not think that they would get hurt. But, at best, such testimony merely reflects the children's assessment that injury was *unlikely*; it was not evidence of any denial by Baxter of the possibility that the tree might fall and that he might be injured.[16]

---

[14] *Kane*, supra at 18 (citation and punctuation omitted); *Goodman v. City of Smyrna*, 230 Ga. App. 630, 633 (497 SE2d 372) (1998).

[15] See *Abee v. Stone Mountain Mem. Assn.*, 252 Ga. 465-466 (314 SE2d 444) (1984).

[16] See generally *Kane*, supra at 19.

9

In view of the evidence that Baxter had actual knowledge of the specific danger presented by pushing over a dead tree, and that he understood and appreciated the risks associated with such danger, yet voluntarily exposed himself to those risks, and the absence of any evidence to the contrary, the trial court erred by denying Kensington Place's motion for summary judgment.[17]

Accordingly, we reverse the judgment and remand the case for the trial court to enter summary judgment in favor of the defendants.[18]

2. Because the doctrine of assumption of the risk bars this action, we do not reach Kensington Place's remaining arguments.

*Judgment reversed and case remanded with direction. Ellington, C. J., and Dillard, J., concur.*

---

[17] See *Abee*, supra; *O'Neal*, supra; *Goodman*, supra.

[18] See *Stewart*, supra.