**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 19, 2014

# In the Court of Appeals of Georgia

A14A0453. TAYLOR et al. v. MCGRAW et al.

ANDREWS, Presiding Judge.

Garrett McGraw, the 13-year-old child of Kimberly Ann McGraw, suffered serious burn injuries from a fire at a marshmallow roast at the residence of Randy and Kristy Taylor. Acting individually and as next friend of her minor child, McGraw sued the Taylors alleging that one of the Taylors' minor children threw sawdust on the fire which caused the fire to explode or flare up and burn Garrett. McGraw contends that the Taylors caused Garrett's injuries by negligently providing their minor child with unsupervised access to the fire and the combustible sawdust. We granted the Taylors' application for an interlocutory appeal from the trial court's denial of their motion for summary judgment. For the following reasons, we find that the Taylors were entitled to summary judgment and reverse.

To prevail on a motion for summary judgment, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9–11–56 (c)." *Lau's Corp. v. Haskins,* 261 Ga. 491, 491 (405 SE2d 474) (1991). Construed in favor of McGraw, the evidence showed the following: Garrett, accompanied by his step-grandfather, was invited by the Taylors to their residence for a marshmallow roast in their back yard. Marshmallows were roasted over a wood fire in a 55 gallon metal barrel. The barrel was situated equidistant between two sheds, about five feet from each shed. A pile of sawdust was located at the back of one of the sheds about ten feet from the barrel. According to Garrett, after he and two of the Taylors' children had been roasting marshmallows for about ten minutes, Mr. Taylor told "one of his kids to get a handful of the dust and put it in the fire and for us to stand back." Garrett said that, when the Taylor child put the sawdust in the fire, "it kind of exploded" and caused "a flareup." At that point, Mr. Taylor and Garrett's step-grandfather went inside the Taylor residence, leaving Garrett and two of the Taylor children outside alone with the fire and the sawdust. Garrett said that he then watched as the Taylor children repeatedly threw sawdust in the fire, and that he threw sawdust in the fire "once or twice."

2

Garrett was questioned at his deposition as to how he was burned by the fire.

Q: So, tell me about how you got burned.

A: Well, after they started throwing little bits of handfuls of it into the fire, they went inside the shed and there's a window right there at the [barrel], and they were . . . grabbing big – like big handfuls of it and throwing it out the window into the fire.

Q: Okay, they were inside the shed?

A: Uh-huh.

Q: Did you ever go inside the shed?

A: Yes.

Q: Did you go inside with them while they were doing this?

A: Yes.

Q: Did you ever pick up any of these big handfuls and do that also?

A: No.

Q: So tell me how you got burned.

A: Well, after – they just kept on doing that for a while, and I just basically stood there at the fire and just watched it, and I wasn't really paying attention, and for just a while, I was doing that. Then I heard [one of the Taylor children] yell, "Watch out," and it was when a big pile of it came out the window and then the fire exploded in my face.

Q: How close to the fire were you at that point . . . [h]ow close were you to the [barrel]?

A: Probably about as far as the length from here to there.

Q: Like the distance across this table?

A: Yes.

Q: A couple of feet?

A: Yes.

Q: How long had you been standing there while they were throwing things out the window? Had you been there for a while? Had you been there at all while they were throwing the stuff out the window into the fire?

A: Yes, I was there.

Q: Each time it was flaring up?

A: Yes.

Q: And so I guess this time it was just an extra large heapful that got thrown out?

A: Yes.

Garrett testified that he knew fire would burn him. One of the Taylor children also testified in his deposition that, after the adults went inside the residence, he, along with his brother and Garrett, threw sawdust in the fire, which "made the fire shoot up," and that Garrett was burned because "he was too close to the fire and the fire shot up and it got on him."

4

McGraw concedes that the gravamen of her complaint was that the Taylors caused Garrett's burn injuries by negligently allowing their minor children unsupervised control of the dangerous combination of the fire in the barrel and the combustible sawdust. In support of this claim, McGraw pointed to evidence that Mr. Taylor showed the children how to use the sawdust to flare up or explode the fire contained in the barrel, and that, immediately after doing so, the Taylors allowed their children to have unsupervised control over these dangerous substances. Under these facts, McGraw contends that a duty was imposed on the Taylors to anticipate injury to another through their children's misuse of the dangerous substances in the manner they had just been shown. See *Corley v. Lewless*, 227 Ga. 745, 748 (182 SE2d 766) (1971); *Jackson v. Moore*, 190 Ga. App. 329, 329 (378 SE2d 726) (1989). We find that, even if a jury could reasonably conclude that the Taylors were negligent on this basis, their negligence was not a proximate cause of the injuries suffered by Garrett. Rather, the undisputed facts show as a matter of law that Garrett assumed the risk of being burned when sawdust was thrown into the fire.

> Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause. Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are

5

ordinarily not susceptible to summary adjudication, where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment.

*Sayed v. Azizullah*, 238 Ga. App. 642, 644 (519 SE2d 732) (1999) (citation and punctuation omitted).

The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. Knowledge of the risk is the watchword of assumption of the risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.

*Muldovan v. McEachern*, 271 Ga. 805, 807-808 (523 SE2d 566) (1999) (citations and punctuation omitted).

Moreover, as to a child between the ages of seven and fourteen,

"there is no presumption that the child did or did not exercise due care or does or does not have sufficient capacity to recognize danger or to observe due care." (Citations and punctuation omitted.) *Jackson v. Young,* 125 Ga. App. 342, 343-344 (187 SE2d 564) (1972). For children between these ages, these issues hinge on the circumstances of the case and the capacity of the particular child. Id. at 344. Nevertheless, there is

6

no bar to applying assumption of the risk, as a matter of law, to the conduct of a child between these ages when the evidence shows that the danger was obvious, that the child knew of the danger and was able to appreciate the risks associated with it, and the child voluntarily chose to run the risk. *Abee v. Stone Mountain Mem. Assn.,* 252 Ga. 465, 466 (314 SE2d 444) (1984), affirming 169 Ga. App. 167 (312 SE2d 142) (1983). Generally, the dangers of fire, water and falling from heights are considered to be understood even by a young child absent factors creating additional risks which could not be appreciated by the child. *Riley v. Brasunas*, 210 Ga. App. 865, 867 (438 SE2d 113) (1993).

*Goodman v. City of Smyrna*, 230 Ga. App. 630, 632 (497 SE2d 372) (1998) (physical precedent); *Kensington Place Owners Assn., Inc. v. Thomas*, 318 Ga. App. 609, 613 (734 SE2d 445) (2012); *Garner v. Rite Aid of Ga., Inc.*, 265 Ga. App. 737, 740 (595 SE2d 582) (2004) (physical precedent); *Stewart v. Harvard*, 239 Ga. App. 388, 396-397 (520 SE2d 752) (1999); *Abee*, 252 Ga. at 465-466.

In the present case, undisputed evidence shows that Garrett, age 13, watched as the Taylor children repeatedly threw handfuls of sawdust into the fire, causing the fire to explode and flare. He initially watched this activity (and participated in it) at a safe distance from the fire. He went into the adjacent shed with the Taylor children and watched as they continued to throw "big handfuls" of sawdust out of the shed window into the fire, each time seeing that the sawdust caused the fire to explode or flare up. But then he left the safety of the shed, and stood at the fire. He admitted that,

7

while he stood at the fire, he watched the Taylor children continue to throw sawdust out of the window into the fire. In explaining how he got burned, Garrett said that "I just basically stood there at the fire and just watched it, and I wasn't really paying attention" until one of the Taylor children yelled, "Watch out," as more sawdust came out the window into the fire, "and then the fire exploded in my face." He admitted that he was standing only a couple of feet from the barrel when he was burned. One of the Taylor children confirmed that Garrett was burned by the sawdust-caused flareup because "he was too close to the fire and the fire shot up and it got on him."

The undisputed facts show that Garrett had actual and subjective knowledge of the specific risk of being burned by standing next to the fire while sawdust being thrown into the fire caused it to explode and flare up; that he understood and appreciated the risk; and that he voluntarily exposed himself to the risk by standing next to the fire knowing sawdust was being thrown into the fire, and admitting that "[he] wasn't really paying attention." On these facts, the Taylors asserted the affirmative defense of assumption of the risk in their answer to the complaint, and in their motion for summary judgment. The trial court erred by failing to grant the motion for summary judgment on this basis.

*Judgment reversed. McFadden and Ray, JJ., concur.*

8